UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

ATON CENTER, INC., a
California corporation,

                              Plaintiff,

v.

PREMERA BLUE CROSS, a
corporation; and DOES 1 through
10, inclusive,

                              Defendants.

Case No.:  3:20-cv-00501-WQH-BGS

**ORDER**

HAYES, Judge:

The matter pending before the Court is the Motion to Dismiss filed by Defendant Premera Blue Cross.  (ECF No. 17).

## I.    PROCEDURAL BACKGROUND

On December 27, 2019, Plaintiff Aton Center, Inc. commenced this action by filing a Complaint in the Superior Court of California for the County of San Diego, assigned case number 37-2019-00068777-CU-BC-NC, against Defendant Premera Blue Cross and DOES 1 through 10, inclusive.  (ECF No. 1-4).  On March 16, 2020, Defendant removed the action to this Court pursuant to 28 U.S.C. § 1332, diversity jurisdiction, 28 U.S.C. § 1441(b), and 28 U.S.C. § 1446.  (ECF No. 1).

On April 17, 2020, Defendant filed a Motion to Dismiss of Plaintiff's Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 7).  On April 22, 2020, the parties filed a Joint Motion to Consolidate Cases.  (ECF No. 8).  On August 17, 2020, the Court granted the Motion to Dismiss and denied the Joint Motion to Consolidate Cases.  (ECF No. 12).

On September 16, 2020, Plaintiff filed a Motion for Leave to File a First Amended Complaint.  (ECF No. 13).  On October 19, 2020, the Court granted the Motion for Leave to File a First Amended Complaint.  (ECF No. 15).

On October 21, 2020, Plaintiff filed an Amended Complaint.  (ECF No. 16). Plaintiff alleges that "Defendant[] breached [its] agreements with Plaintiff and/or committed other wrongful acts and omissions by refusing to pay Plaintiff the represented and agreed upon/represented amount, but rather paid different and significantly lower (and inconsistent) previously undisclosed amounts for treatment, leaving an unpaid balance of $319,291.43 owing from Defendant[] to Plaintiff which has caused Plaintiff substantial hardship."  *Id*. at 8.  Plaintiff brings the following nine causes of action: (1) breach of oral contract; (2) breach of implied contract; (3) promissory estoppel; (4) quantum meruit; (5) intentional misrepresentation (fraudulent inducement); (6) negligent misrepresentation; (7) intentional concealment; (8) violation of Business & Professions Code § 17200; and (9) open book account.  *See id*. at 9-18.  Plaintiff seeks "general, special, restitutionary and/or compensatory damages"; prejudgment interest; expenses, attorney's fees, and other costs; "an injunction and/or other equitable relief enjoining the conduct alleged herein, an accounting, the appointment of a receiver over Defendant[] and/or other appropriate equitable relief"; and "such other and further relief as the Court may deem just and proper." *Id*. at 18.

On November 3, 2020, Defendant filed a Motion to Dismiss of Plaintiff's Amended Complaint for failure to state a claim upon which relief can be granted pursuant to Federal

Rule of Civil Procedure 12(b)(6).  (ECF No. 17).[1]  On November 23, 2020, Plaintiff filed a Response in opposition.  (ECF No. 18).  On December 7, 2020, Defendant filed a Reply. (ECF No. 21).

## II.    ALLEGATIONS OF THE AMENDED COMPLAINT

"Plaintiff . . . is a corporation authorized to do and doing business in the City of Encinitas, County of San Diego, State of California . . . as an inpatient residential substance abuse treatment facility . . . ."  (ECF No. 16 at 2).  Plaintiff "provided residential treatment care services which were or should have been covered by health insurance policies which . . . were provided, sponsored, supplied, underwritten, administered and/or implemented by Defendant[] . . . ."  *Id*.  "Defendant . . . is a corporation authorized to do and doing substantial insurance and/or health plan/policy administration business in the city of Encinitas, county of San Diego, and state of California, within the jurisdiction of this court."  *Id*.  "This case involves nine different individuals who received residential treatment care at [Plaintiff's facility] which was covered under healthcare plans written, issued and/or administered by Defendant . . . ."  *Id*.

> While the subject plans/policies were in effect, AH, AP, BG, CP, JH, KF, MC, TM and WD, who were insured under plans issued by Defendant[] sought treatment with Plaintiff. Plaintiff took reasonable steps to verify available benefits, including contacting Defendant[], as directed by Defendant[], including calling Defendant[] at phone numbers provided by Defendant[], to verify insurance benefits. [Plaintiff] was an out of network provider to [Defendant] as to the claims at issue herein. As an out of network provider, the verification of benefit (VOB) process was very important to [Plaintiff] which needed accurate information concerning coverage and payment rates so that [Plaintiff] and its patient[s] could make informed financial decisions as to admission to [Plaintiff's] residential treatment care program. At all times relevant herein, Defendant[] knew that the information it was providing during the VOB process was material and would be relied on by [Plaintiff] and its patients. As is discussed in more detail in paragraphs 8-

---

[1] Defendant requests the Court to take judicial notice of Exhibit 1 (ECF No. 17-3) and Exhibit 2 (ECF No. 17-4) in support of Defendant's Motion to Dismiss (ECF No. 17).  *See* ECF No. 17-2.  The Court has not considered these exhibits in resolving this Order.

16 below, . . . [Plaintiff] was advised in these verification of benefit (VOB) calls that the policies provided for and Defendant[] would pay for inpatient treatment, based on the usual, customary and reasonable rate (UCR) and/or prior payment history.

In addition to verifying benefits, [Plaintiff] was required to and did obtain authorization for all of the specific treatment provided to the patients with claims at issue herein. Multiple authorizations were obtained for each patient. As [Plaintiff] provides residential treatment care, and not partial hospitalization or any outpatient services, the authorizations were for the residential treatment care services provided [to] AH, AP, BG, CP, JH, KF, MC, TM and WD which were billed under the applicable Revenue Code 1002.

*Id*. at 3-4.

Defendant's representatives informed Plaintiff's employees over the phone that "claims would be paid based on the UCR which meant that for AH[][, CP, JH, KF, and WD] Defendant[] would pay 50% of [Plaintiff]'s billed charges" and "for AP[, BG, MC, and TM] Defendant[] would pay 70% of [Plaintiff]'s billed charges." *Id*. at 4-8. "After admission, and on multiple occasions, [Plaintiff] obtained authorization from Defendant[] to provide residential treatment care to" each of the nine patients. *Id*. at 5-8.

Within the past two years, at Encinitas, California, the Defendant[] breached [its] agreements with Plaintiff and/or committed other wrongful acts and omissions by refusing to pay Plaintiff the represented and agreed upon/represented amount, but rather paid different and significantly lower (and inconsistent) previously undisclosed amounts for treatment, leaving an unpaid balance of $319,291.43 owing from Defendant[] to Plaintiff which has caused Plaintiff substantial hardship. Plaintiff is informed and believes and thereon alleges that at the time benefits were verified Defendant[] had information regarding the different/lower daily payment amounts but intentionally withheld that information from Plaintiff. As a result of the facts and conduct alleged herein, an unconscionable injury would result to Plaintiff if Defendant[] [is] not required to pay the represented/agreed to payment rate based on the UCR/stated percentages of billed charges and payment history, and Defendant[] [is] equitably estopped from denying the agreement/obligation to pay that amount.

*Id*. at 8-9.

### III.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted . . . ." Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8(a) provides that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). "A district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011). "All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002) (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001)).

"[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (citation omitted). When considering a motion to dismiss, a court must accept as true all "well-pleaded factual allegations . . . ." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). However, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell*, 266 F.3d at 988. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

# IV.   DISCUSSION

### a.   Breach of Oral Contract (claim 1) and Breach of Implied Contract (claim 2)

Defendant contends that Plaintiff fails to allege sufficient facts to establish an oral or implied contract between Plaintiff and Defendant.  Defendant contends that Plaintiff fails to allege mutual assent and definite terms.  Defendant contends that an oral or implied contract was not formed during the VOB calls initiated by Plaintiff.  Defendant contends that Plaintiff fails to allege that the parties reached an agreement on price because Plaintiff fails to allege a specific dollar amount that Defendant agreed to pay.  Plaintiff contends that its breach of contract claims are based on the VOB calls and Defendant's authorization for Plaintiff's services.  Plaintiff asserts that Defendant stated that it would pay for Plaintiff's services based on the UCR and that Defendant authorized Plaintiff's services.  Plaintiff asserts that VOB and authorization communications form the basis of contract agreements.  Plaintiff asserts that the Amended Complaint specifies the type of treatment, the specific billing rate for each patient, and the details of the VOB and authorization calls.  Plaintiff asserts that the UCR is a certain and well-known term in the industry analogous to the concept of fair market value.  Plaintiff asserts that Defendant agreed to a recognized method by which the dollar amount would be objectively determined when Defendant stated that it would pay based on the UCR.  Plaintiff contends that agreement on a method or formula for calculating payment is sufficient to establish a meeting of the minds.

"The standard elements of a claim for breach of contract are: (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom."  *Wall St. Network, Ltd. v. New York Times Co.*, 164 Cal. App. 4th 1171, 1178 (2008).  "The elements of a breach of oral contract claim are the same as those for a breach of written contract . . . ."  *Stockton Mortg., Inc. v. Tope*, 233 Cal. App. 4th 437, 453 (2014).  "A cause of action for breach of implied contract has the same elements as does a cause of action for breach of contract, except that the promise is not

expressed in words but is implied from the promisor's conduct." *Yari v. Producers Guild of Am., Inc.*, 161 Cal. App. 4th 172, 182 (2008).

"A contract implied in fact consists of obligations arising from a mutual agreement and intent to promise where the agreement and promise have not been expressed in words." *San Mateo Union High Sch. Dist. v. Cty. of San Mateo*, 213 Cal. App. 4th 418, 439 (2013). "A course of conduct can show an implied promise." *California Emergency Physicians Med. Grp. v. PacifiCare of California*, 111 Cal. App. 4th 1127, 1134 (2003), *disapproved of on other grounds by Centinela Freeman Emergency Med. Assocs. v. Health Net of California, Inc.*, 1 Cal. 5th 994 (2016). However, "the assumption, intention or expectation of either party alone, not made known to the other, can give rise to no inference of an implied contract . . . ." *Travelers Fire Ins. Co. v. Brock & Co.*, 47 Cal. App. 2d 387, 392 (1941).

"It is essential to the existence of a contract that there should be: 1. [p]arties capable of contracting; 2. [t]heir consent; 3. [a] lawful object; and[] 4. [a] sufficient cause or consideration." Cal. Civ. Code § 1550. "The consent of the parties to a contract must be: 1. [f]ree; 2. [m]utual; and[] 3. [c]ommunicated by each to the other." Cal. Civ. Code § 1565. "Consent is not mutual, unless the parties all agree upon the same thing in the same sense." Cal. Civ. Code § 1580. "The existence of mutual consent is determined by objective rather than subjective criteria, the test being what the outward manifestations of consent would lead a reasonable person to believe." *Weddington Prods., Inc. v. Flick*, 60 Cal. App. 4th 793, 811 (1998).

VOB and authorization calls alone are generally insufficient to form the basis for an oral or implied contract because they lack a manifestation of intent to enter into a contract. *See e.g.*, *TML Recovery, LLC v. Humana Inc.*, No. SACV 18-00462 AG (JDEx), 2018 WL 8806104, at *3 (C.D. Cal. Nov. 26, 2018) ("[W]ithin the medical insurance industry, an insurer's verification is not the same as a promise to pay."); *TML Recovery, LLC v. Humana Inc.*, No. SACV 18-00462 AG (JDEx), 2019 WL 3208807, at *4 (C.D. Cal. Mar. 4, 2019) (same). The California Court of Appeals has found that "specific facts [are] required for [courts] to determine there was any meeting of the minds between the parties." *Pac. Bay*

*Recovery, Inc. v. California Physicians' Servs., Inc.*, 12 Cal. App. 5th 200, 216 (2017). "[A]llegations [ ] that [the defendant] admitted that the subscriber was covered under one of its health plans and that it would pay something for [the plaintiff]'s treatment of the subscriber" are insufficient. *Id.* The plaintiff must allege that "the parties reached an . . . agreement as to the rate [the defendant] would pay . . . ." *Id.* Courts have found that factual allegations beyond VOB and authorization calls may be sufficient to allege the existence of an oral or implied contract when the plaintiff alleges "[w]hat type of treatment or the extent of treatment" as well as "what exactly [the defendant] agreed to pay." *Id.*; *see e.g., Bristol SL Holdings, Inc. v. Cigna Health Life Ins. Co.*, No. SACV 19-00709 AG (ADSx), 2020 WL 2027955, at \*3 (C.D. Cal. Jan. 6, 2020) (allegations for each patient regarding the type of treatment; how long the course of treatment was expected to last; and a specific billing rate pegged to a percentage of the usual, customary and reasonable rate were found sufficient to plead a plausible claim under Rule 8(a)); *California Spine & Neurosurgery Inst. v. United Healthcare Servs., Inc.*, No. 18-CV-2867 PSG (AFM), 2018 WL 6074567, at \*4 (C.D. Cal. June 28, 2018) (allegations including specific names and dates of the calls between plaintiff and defendant regarding payment for patient's services, what the services would be, and a specific price of 75% of the UCR rate until patient's MOOP expense was met and 100% of the UCR rate afterwards were found sufficient to allege that an oral contract was formed between the parties); *Out of Network Substance Use Disorder Claims*, No. SACV 19-2075 JVS (DFMx), 2020 WL 2114934, at \*8 (C.D. Cal. Feb. 21, 2020) (allegations that payment for the treatment provided to defendants' insureds would be calculated on the same terms as provided for in the policies between defendants and their insureds, specifically that payments to plaintiff would equal approximately 70% of plaintiff's fully-billed charges (based on 30% co-insurance payable by the patients), plausibly describe the services defendant promised to pay for).

In this case, the Amended Complaint alleges that Plaintiff "was advised in these verification of benefit (VOB) calls that the policies provided for and Defendant[] would pay for inpatient treatment, based on the usual, customary and reasonable rate (UCR) and/or

prior payment history." (ECF No. 16 at 4).  The Amended Complaint alleges that Defendant informed Plaintiff that "claims would be paid based on the UCR which meant that for AH[][, CP, JH, KF, and WD] Defendant[] would pay 50% of [Plaintiff]'s billed charges" and "for AP[, BG, MC, and TM] Defendant[] would pay 70% of [Plaintiff]'s billed charges."  *Id*. at 4-8.  Pursuant to Plaintiff's claim for breach of oral contract, the Amended Complaint alleges that "Plaintiff and Defendant[] entered into agreements . . . whereby Plaintiff would provide residential treatment care inpatient substance abuse treatment to its patients/Defendant[']s[] insureds at the usual, reasonable and customary rate which was communicated by Defendant[] to Plaintiff to mean the percentages of billed charges stated above for each patient."  *Id*. at 9.  The Amended Complaint alleges "specific billing rate[s] pegged to [] percentage[s] of the usual, customary and reasonable rate . . . ."  *Bristol*, 2020 WL 2027955, at *3.

The Amended Complaint further alleges that "[i]n addition to verifying benefits, [Plaintiff] was required to and did obtain authorization for all of the specific treatment provided to the patients with claims at issue herein" and that "[m]ultiple authorizations were obtained for each patient."  (ECF No. 16 at 4).  The Amended Complaint alleges that Plaintiff "obtained authorization from Defendant[] to provide residential treatment care to" patients AH, AP, BG, CP, JH, KF, MC, TM and WD.  *Id*. at 5-8.  Pursuant to Plaintiff's claim for breach of oral contract, the Amended Complaint alleges that "Plaintiff and Defendant[] entered into agreements . . . whereby Plaintiff would provide residential treatment care inpatient substance abuse treatment to its patients/Defendant[']s[] insureds . . . ."  *Id*. at 9.  The factual allegations of oral contract go beyond VOB and authorization calls describing the type of treatment and specific billing rates.  The Court finds that the Amended Complaint alleges sufficient facts to infer mutual consent in which "the parties all agree[d] upon the same thing in the same sense."  Cal. Civ. Code § 1580.  The Court concludes that Plaintiff alleges a plausible claim for breach of oral contract against Defendant.

1    Pursuant to Plaintiff's claim for breach of implied contract, the Amended Complaint
2    alleges that "Plaintiff and Defendant[] entered into implied contracts whereby Plaintiff
3    would provide inpatient residential substance abuse treatment to AH, AP, BG, CP, JH, KF,
4    MC, TM and WD at the usual, reasonable and customary rate which was represented and
5    understood to be the percentages of billed charges referred to above."  (ECF No. 16 at 10).
6    The Amended Complaint fails to allege sufficient facts to establish "[a] course of conduct .
7    . . ."  *PacifiCare of California*, 111 Cal. App. 4th at 1134.   The Court concludes that
8    Plaintiff's claim for breach of implied contract against Defendant fails to state a claim upon
9    which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

10                **b.  Promissory Estoppel (claim 3)**

11    Defendant contends that Plaintiff fails to allege that Defendant made any clear and
12    unambiguous promise to pay a specific amount.  Defendant contends that Plaintiff's reliance
13    on Defendant's representations is unreasonable because of the ambiguous nature of the
14    alleged promise.  Plaintiff contends that its promissory estoppel claim is based on VOB and
15    authorization calls with Defendant during which Defendant stated that it would pay based
16    on the UCR.  Plaintiff contends that Defendant should be estopped from paying anything
17    other than the UCR.

18    "A cause of action for promissory estoppel is basically the same as contract actions,
19    but only missing the consideration element."  *Yari*, 161 Cal. App. 4th at 182.  "Promissory
20    estoppel applies whenever a promise which the promissor should reasonably expect to
21    induce action or forbearance on the part of the promisee or a third person and which does
22    induce such action or forbearance would result in an injustice if the promise were not
23    enforced."  *Advanced Choices, Inc. v. State Dep't of Health Servs.*, 182 Cal. App. 4th 1661,
24    1671-72 (2010).  "The elements of a promissory estoppel claim are (1) a promise clear and
25    unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the]
26    reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel
27    must be injured by his reliance."  *Id*. at 1672 (alteration in original).

28    In this case, the Amended Complaint alleges that

As alleged herein, Plaintiff is informed and believes that Defendant[] knew that the patient[]s['] insurance policies did not provide the coverage payment amounts represented by Defendant[] to the public at large and specifically Plaintiff. Nevertheless, Plaintiff is informed and believes and thereon alleges that Defendant[] knowingly and/or negligently represented to Plaintiff the coverage payment amounts alleged hereinabove for the residential treatment care provided to AH, AP, BG, CP, JH, KF, MC, TM and WD with the intention that Plaintiff would rely on the representations and knowing that Plaintiff had no knowledge of the falsity of the representations.

Plaintiff relied upon Defendant[']s[] representations and admitted the Defendant[']s[] insureds[] [AH,] AP, BG, CP, JH, KF, MC, TM and WD for the residential treatment detailed herein based thereon. Had Plaintiff known of the falsity of the representations it would not have done so. Accordingly, Defendant[] [is] estopped from asserting any payment amount contrary to the representations made by Defendant[] and Plaintiff is entitled to damages in an amount according to proof together with interest at the legal rate, and any other appropriate relief.

(ECF No. 16 at 11).

Plaintiff has alleged sufficient facts to state a plausible claim for breach of oral contract.  The Court finds that the Amended Complaint alleges sufficient facts to infer a clear and unambiguous promise, Plaintiff's reasonable and foreseeable reliance on that promise, and Plaintiff's injury as a result of its reliance.  *See Advanced Choices*, 182 Cal. App. 4th at 1672.   The Court concludes that Plaintiff alleges a plausible claim for promissory estoppel against Defendant.  Plaintiff's claim for promissory estoppel is not barred by the economic loss rule to the extent that Plaintiff's promissory estoppel claim seeks contractual relief.  *See e.g.*, *Bristol*, 2020 WL 2027955, at *4 ("To the extent Bristol's promissory estoppel claim seeks contractual relief, it is not barred by the economic loss rule."); *California Spine*, 2018 WL 6074567, at *5 (same); *Out of Network*, 2020 WL 2114934, at *8 (same).

### c.  **Quantum Meruit (claim 4)**

Defendant contends that Plaintiff fails to allege sufficient facts to establish that Defendant requested or benefitted from Plaintiff's services.  Plaintiff contends that all of

the elements of a quantum meruit claim are included and supported by factual allegations in the Amended Complaint.

"Quantum meruit refers to the well-established principle that the law implies a promise to pay for services performed under circumstances disclosing that they were not gratuitously rendered." *Children's Hosp. Cent. California v. Blue Cross of California*, 226 Cal. App. 4th 1260, 1274 (2014). "Quantum meruit (or quasi-contract) is an equitable remedy implied by the law under which a plaintiff who has rendered services benefiting the defendant may recover the reasonable value of those services when necessary to prevent unjust enrichment of the defendant." *In re De Laurentiis Entm't Grp. Inc.*, 963 F.2d 1269, 1272 (9th Cir. 1992). "[I]n order to recover under a quantum meruit theory, a plaintiff must establish *both* that he or she was acting pursuant to either an *express or implied request* for such services from the defendant *and* that the services rendered were *intended to and did benefit* the defendant." *Day v. Alta Bates Med. Ctr.*, 98 Cal. App. 4th 243, 248 (2002).

In this case, the Amended Complaint alleges that

> As alleged herein Defendant[] communicated to Plaintiff that the insureds/patients whose claims are at issue herein were insured and that the claims would be covered based on the UCR rate[,] which Defendant[] represented to be the percentages of billed charges alleged herein and prior history of dealings. By virtue of these communications and the conduct of the Defendant[] alleged herein Plaintiff was induced to provide substance abuse treatment services. Both Plaintiff and Defendant[] understood and expected that Plaintiff would be compensated at the represented/agreed UCR rate[.]

> Plaintiff provided the substance abuse treatment services to the patients/insureds identified herein in reasonable reliance upon the representations and conduct of the Defendant[]. Plaintiff providing the substance abuse treatment services in reliance on the representations, communications and/or agreements by Defendant[] was not gratuitous, but rather with the understanding and expectation that it would be compensated at the UCR rate. Defendant benefited from the treatment because it fulfilled its legal/contractual obligation to provide a true out of network treatment option for its insureds.

The amounts that Plaintiff billed for the substance abuse treatment services was and is the reasonable value of those services. Nevertheless, Defendant[] ha[s] refused to pay the reasonable value of the services [it] represented would be paid, and instead ha[s] only paid a small fraction of the reasonable value of the services. Under the circumstances, Defendant[] cannot conscientiously refuse to pay the balance due for the patients/insureds identified herein and Defendant[] should be required to pay the remainder of the reasonable value of the substance abuse treatment services provided by Plaintiff to the insureds of Defendant[].

(ECF No. 16 at 12).

The Amended Complaint fails to allege sufficient facts to establish that Plaintiff "was acting pursuant to either an *express or implied request* for [ ] services from [ ] [D]efendant . . . ." *Day*, 98 Cal. App. 4th at 248; *see e.g.*, *California Spine*, 2018 WL 6074567, at *2 ("Because the facts as alleged do not establish that Defendant made an express or implied request for Plaintiff's services, Plaintiff cannot establish the first element of its quantum meruit claim."); *California Spine & Neurosurgery Inst. v. United Healthcare Servs., Inc.*, No. CV 18-2867 PSG (AFMx), 2018 WL 6118530, at *2-3 (C.D. Cal. Oct. 9, 2018) (finding that a request for services after services were rendered is irrelevant in determining whether defendant requested services); *Summit Estate, Inc. v. Cigna Healthcare of California, Inc.*, No. 17-CV-03871-LHK, 2017 WL 4517111, at *11 (N.D. Cal. Oct. 10, 2017) (finding that VOB calls by plaintiff to defendants to verify available benefits fail to plausibly suggest that Defendants requested Plaintiff to render those services); *California Spine & Neurosurgery Inst. v. United Healthcare Ins. Co.*, No. 19-CV-02417-LHK, 2019 WL 4450842, at *6 (N.D. Cal. Sept. 17, 2019) (same); *California Spine & Neurosurgery Inst. v. United Healthcare Ins. Co.*, No. 19-CV-02417-LHK, 2020 WL 887833, at *4 (N.D. Cal. Feb. 24, 2020) (same). In addition, the Amended Complaint fails to allege sufficient facts to establish "that the services rendered were *intended to and did benefit* [ ] [D]efendant." *Day*, 98 Cal. App. 4th at 248. The Court concludes that Plaintiff's claim for quantum meruit against Defendant fails to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

### d. Intentional Misrepresentation (Fraudulent Inducement) (claim 5); Negligent Misrepresentation (claim 6); Intentional Concealment (claim 7)

Defendant contends that Plaintiff's fraud-based claims are barred by the economic loss rule. Defendant contends that Plaintiff's intentional misrepresentation claim fails because Plaintiff fails to adequately allege facts to infer intent. Defendant contends that Plaintiff's negligent misrepresentation claim fails because Defendant's allegedly negligent false promise to pay in the future is not an actionable misrepresentation. Defendant contends that Plaintiff's intentional concealment claim fails because Plaintiff fails to allege facts establishing that Defendant had a duty to disclose the specific amount it would pay for Plaintiff's services. Plaintiff contends that the economic loss rule is inapplicable to claims for fraudulent inducement. Plaintiff contends that the economic loss rule is inapplicable at the pleading stage when alternative claims are alleged for breach of contract and fraud and when the existence of a contract is disputed. Plaintiff contends that its fraud claims are properly pled because Defendant stated that it would pay based on the UCR when it knew that it would pay different and lower amounts and Defendant's fraudulent misrepresentations induced Plaintiff to agree to treat patients.

"[T]he economic loss rule prevent[s] the law of contract and the law of tort from dissolving one into the other." *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004) (second alteration in original). Generally, the economic loss rule bars tort claims and damages for contract breaches. *See e.g.*, *Bristol*, 2020 WL 2027955, at *4 (same); *United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*, 660 F. Supp. 2d 1163, 1180 (C.D. Cal. 2009) (same). "[L]imiting contract breach [claims and] damages to those within the reasonably foreseeable contemplation of the parties when the contract was formed serves to encourage contractual relations and commercial activity by enabling parties to estimate in advance the financial risks of their enterprise." *Freeman & Mills, Inc. v. Belcher Oil Co.*, 11 Cal. 4th 85, 95 (1995). "The economic loss rule requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise." *Robinson Helicopter*,

34 Cal. 4th at 988. In other words, "conduct amounting to a breach of contract becomes tortious only when it also violates a duty independent of the contract arising from principles of tort law." *Erlich v. Menezes*, 21 Cal. 4th 543, 551 (1999).

In this case, the Amended Complaint alleges the following regarding Plaintiff's intentional misrepresentation (fraudulent inducement) claim:

> Within the past two years, Plaintiff and Defendant[] entered into negotiations for the treatment and services of Plaintiff's patients/Defendant[']s[] insureds as alleged herein. In connection with these negotiations, said Defendant[] . . . with the intent to deceive and defraud Plaintiff, falsely and fraudulently made representations to Plaintiff, by way of example and without limitation, alleged in paragraph 6 hereinabove.

> In truth and in fact, these representations were false, were known at the time by said Defendant[] . . . to be false, and were made with the intent to induce Plaintiff to act in reliance thereon as alleged herein.

> Plaintiff, reasonably believing and relying upon said representations made by the Defendant[], who held [it]sel[f] out to have special knowledge and expertise, provided the treatment as alleged herein.

> Within the past two years, Plaintiff discovered that the representations made by said Defendant[] . . . were in fact false as alleged in paragraph 8 herein.

> As a direct and proximate result of the fraud and deceit of said Defendant[] . . . Plaintiff has suffered damages as alleged herein, subject to proof at the time of trial.

(ECF No. 16 at 13).

The Amended Complaint alleges the following regarding Plaintiff's negligent misrepresentation claim:

> Defendant[] required that Plaintiff contact [it] through proper channels, which Plaintiff did, to confirm and verify insurance benefits, determine the rate of payment and obtain authorizations for the residential treatment care services which Plaintiff did. In doing so, Defendant[] had a duty to provide accurate/correct information regarding benefits and payment rates when contacted by providers and it was and is foreseeable to Defendant[] that

providers would rely on the information given to them and that providers would be damaged if they were provided with incorrect information. When Defendant[] made said representations to Plaintiff as alleged herein, [it] had no sufficient or reasonable grounds for believing them to be true, in that Defendant[] . . . did not have accurate information and data, nor any information and data, concerning the accuracy of the representations, and understood without such information and data, [it] could not accurately make the representations to Plaintiff as alleged herein. Plaintiff is informed and believes and thereon alleges that at the time of the representations made by Defendant[] as alleged herein above, and thereafter, Defendant[] . . . concealed and suppressed from Plaintiff [its] lack of information and data and the consequent inability to accurately make the representations referred to herein above.

*Id*. at 13-14.

The Amended Complaint alleges the following regarding Plaintiff's intentional concealment claim:

Plaintiff is informed and believes and based thereon alleges that the Defendant[] . . . actively concealed material facts regarding the coverages and/or rates that it would pay from Plaintiff by way of example and without limitation, among other things, as alleged at paragraphs 6 and 8 herein. This information was not discoverable or known to Plaintiff and was known only to Defendant[].

As a direct and proximate result of the fraudulent concealment by Defendant[] . . . Plaintiff acted as alleged herein and sustained damages as alleged herein.

*Id*. at 14.

"Tort damages have been permitted in contract cases where a breach of duty directly causes physical injury; for breach of the covenant of good faith and fair dealing in insurance contracts; for wrongful discharge in violation of fundamental public policy; or where the contract was fraudulently induced." *Erlich*, 21 Cal. 4th at 551-52 (citations omitted). "In each of these cases, the duty that gives rise to tort liability is either completely independent of the contract or arises from conduct which is both intentional and intended to harm." *Id*. at 552. "[F]raudulent inducement of contract-as the very phrase suggests-is not a context

where the traditional separation of tort and contract law obtains." *Lazar v. Superior Court*, 12 Cal. 4th 631, 645 (1996) (citation omitted). "To the contrary, this area of the law traditionally has involved both contract and tort principles and procedures." *Id*. "[I]t has long been the rule that where a contract is secured by fraudulent representations, the injured party may elect to affirm the contract and sue for the fraud." *Id*.

Pursuant to California law, "[t]he elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Id*. at 638. Pursuant to Federal Rule of Civil Procedure 9(b), "a party must state with particularity the circumstances constituting fraud or mistake" but "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "[A]lthough the language of Rule 9 poses no barrier in itself to general pleading of fraudulent intent, *Twombly* and *Iqbal*'s pleading standards must still be applied to test complaints that contain claims of fraud." *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 n.5 (9th Cir. 2014). In other words, although intent may be alleged generally, a plaintiff must allege facts to demonstrate that the defendant harbored an intention not to be bound by terms of the contract. *See UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092, 1109-10 (C.D. Cal. 2015).

"A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud." *Lazar*, 12 Cal. 4th at 638. However, intent not to perform cannot be proved simply by showing a subsequent failure to perform and "something more than nonperformance is required to prove the defendant's intent not to perform his promise." *Tenzer v. Superscope, Inc.*, 39 Cal. 3d 18, 30 (1985). "To be sure, fraudulent intent must often be established by circumstantial evidence." *Id*. "[F]or example, . . . fraudulent intent has been inferred from such circumstances as defendant's insolvency, his hasty repudiation of the promise, his failure even to attempt performance,

or his continued assurances after it was clear he would not perform." *Id*. "However, if plaintiff adduces no further evidence of fraudulent intent than proof of nonperformance of an oral promise, he will never reach a jury." *Id*. at 30-31.

In this case, the only allegation in the Amended Complaint that could give rise to an inference that a promise was made with no intention of performing is Plaintiff's allegation that Defendant failed to honor the promise. However, "evidence of fraudulent intent [consisting of only] nonperformance of an oral promise" is insufficient to support a finding of intentional misrepresentation. *Id*. at 31; *see e.g.*, *UMG Recordings*, 117 F. Supp. 3d at 1110 (alleging "that the promise was made with no intention of performing" will not support promissory fraud); *Mat-Van, Inc. v. Sheldon Good & Co. Auctions, LLC,* No. 07-CV-912-IEG (BLM), 2007 WL 2206946, at *6 (S.D. Cal. July 27, 2007) (alleging "that defendant ultimately did not perform the material terms of the contract" will not support promissory fraud); *Sunnyside Dev. Co., LLC v. Opsys Ltd.*, No. C 05-0553 MHP, 2005 WL 1876106, at *6 (N.D. Cal. Aug. 8, 2005) (alleging "that a party breaches a promise to perform a condition of contract" will not give rise to an inference of "fraudulent intent at the time that the promise was made"); *Smith v. Allstate Ins. Co.*, 160 F. Supp. 2d 1150, 1153-54 (S.D. Cal. 2001) (alleging that a defendant breached a contract fails to adequately plead that the defendant entered into the contract with no intent to perform). The Court concludes that Plaintiff's claims for intentional misrepresentation (fraudulent inducement) against Defendant fails to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 9(b). In this case, the Amended Complaint further fails to distinguish any separate harm other than economic damages arising out of Defendant's failure to make proper payment to Plaintiff, which is not enough for tort damages arising out of negligent misrepresentation and intentional concealment claims. The Court concludes that Plaintiff's claims for negligent misrepresentation and intentional concealment against Defendant are barred by the economic loss rule.

### e.  Violation of Business & Professions Code § 17200 (claim 8)

Defendant contends that Plaintiff fails to allege that Defendant and Plaintiff are competitors in the same business because Plaintiff is a substance abuse treatment center and Defendant insures or administers health benefit plans.  Defendant contends that Plaintiff fails to allege that it is a consumer of Defendant's services because Plaintiff fails to allege that it is enrolled in a health plan insured or administered by Defendant.  Defendant contends that Plaintiff fails to establish an unlawful act because California statutes do not apply to Defendant.  Defendant contends that Plaintiff fails to allege that mental health benefits and substance abuse treatment were treated differently than medical benefits and treatment.  Plaintiff contends that the Amended Complaint sufficiently alleges that Defendant engaged in a deceptive business practice by inducing Plaintiff to provide treatment to Defendant's insureds.  Plaintiff contends that the Amended Complaint sufficiently alleges that Defendant engaged in unfair conduct and that the general public is negatively impacted by Defendant's alleged misconduct when fewer treatment options are available during the opioid crisis as substance abuse treatment providers are driven out of business.

California's Unfair Competition Law ("UCL") "prohibits 'any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1129-30 (9th Cir. 2014) (quoting Cal. Bus. & Prof. Code § 17200).  "In prohibiting any unlawful business practice, the UCL borrows violations of other laws and treats them as unlawful practices that the [UCL] makes independently actionable." *Id.*  "An unfair business practice is one that either offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *McDonald v. Coldwell Banker*, 543 F.3d 498, 506 (9th Cir. 2008).  "To state a claim under either [the fraudulent or unfair] prong, a plaintiff's burden of proof is modest: the representative plaintiff must show that members of the public are likely to be deceived by the practice." *Friedman v. AARP, Inc.*, 855 F.3d 1047, 1055 (9th Cir. 2017).  "Actions for relief pursuant to [the UCL may] be prosecuted . . . by a person who has suffered injury

in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204.

In this case, the Amended Complaint alleges, in part,

At all times relevant herein, California Business and Professions Code section 17200 et seq. was in full force and effect. The Defendant[] ha[s] engaged in a pattern of conduct including, by way of example and without limitation, prior to treatment informing non-network substance abuse treatment providers like Plaintiff that substance abuse treatment services will be paid based on the UCR and/or payment history to induce them to provide treatment to their insureds, then authorizing providers to perform the services (like they did with Plaintiff herein), but when claims are submitted Defendant[] pay[s] only a fraction of the UCR and provide[s] false and misleading information regarding the payment amounts for the services. This continuing conduct is unlawful, unfair and/or fraudulent and constitutes an unfair business practice.

. . . .

. . . Plaintiff is informed and believes and thereon alleges that Defendant[']s conduct is in violation of California law, including but not limited to California Health and Safety Code section 1371.8, Insurance Code section 790.03 and California's mental health parity laws.

(ECF No. 16 at 15, 17).

Plaintiff's allegations regarding Defendant's violations of California Health and Safety Code section 1371.8, Insurance Code section 790.03 and California's mental health parity laws are "merely conclusory" and not "required to [be] accept[ed] as true . . . ." *Sprewell*, 266 F.3d at 988; *compare with Out of Network*, 2020 WL 2114934, at *10 ("The Court finds that Plaintiff sufficiently alleges that United is liable under the 'unlawful' prong of the UCL. The Complaint does not merely allege a 'laundry list' of statutes . . . but also specific conduct on United's part that plausibly constitutes violations of these statutes.").

"[N]otwithstanding the wide range of conduct that can be deemed 'unfair' within the meaning of section 17200, . . . in cases involving allegations of unfairness under the UCL", "where a UCL action is based on contracts not involving either the public in general or

individual consumers who are parties to the contract, a corporate plaintiff may not rely on the UCL for the relief it seeks." *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 135 (2007).  "The UCL was enacted to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." *Id*.  In order to allege unfairness pursuant to the UCL, the plaintiff must be an "alleged . . . competitor[] []or [a] powerless, unwary consumer[] . . . ." *Id*.  In this case, the Amended Complaint fails to allege facts to infer that Plaintiff is either Defendant's competitor or consumer. *See id*.; *see e.g.*, *Out of Network*, 2020 WL 2114934, at *9 ("Plaintiff does not dispute United's argument that it cannot state a claim under the 'unfair' prong because it is not a consumer nor a competitor of United's.").

In addition, the Court has found that Plaintiff's fraud claims fail to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 9(b) and are barred by the economic loss rule.  The Amended Complaint fails to allege sufficient facts to establish that Defendant committed "any unlawful, unfair or fraudulent business act or practice . . . ." *Levitt*, 765 F.3d at 1129-30 (quoting Cal. Bus. & Prof. Code § 17200).  The Court concludes that Plaintiff's claim for violation of Business & Professions Code § 17200 against Defendant fails to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

### f.  Open Book Account (claim 9)

Defendant contends that Plaintiff's open book account claim fails because Plaintiff fails to allege that Defendant agreed to be bound by a book account or that Defendant agreed to the monetary value of that account.  Plaintiff contends that the Amended Complaint sufficiently alleges the elements of a claim for open book account including a course of dealings and financial transactions between Plaintiff and Defendant.

The term "book account" means

a detailed statement which constitutes the principal record of one or more transactions between a debtor and a creditor arising out of a contract or some fiduciary relation, and shows the debits and credits in connection therewith, and against whom and in favor of whom entries are made, is entered in the

regular course of business as conducted by such creditor or fiduciary, and is kept in a reasonably permanent form and manner and is (1) in a bound book, or (2) on a sheet or sheets fastened in a book or to backing but detachable therefrom, or (3) on a card or cards of a permanent character, or is kept in any other reasonably permanent form and manner.

Cal. Civ. Proc. Code § 337a. "A book account is created by the agreement or conduct of the parties in a commercial transaction." *H. Russell Taylor's Fire Prevention Serv., Inc. v. Coca Cola Bottling Corp.*, 99 Cal. App. 3d 711, 728 (Ct. App. 1979).  If "there is no evidence of an agreement between the parties" to form a book account and if "the conduct of the parties [does not] show that they intended or expected such an account would be created", then "there is insufficient evidence to support the finding of an open book account." *Maggio, Inc. v. Neal*, 196 Cal. App. 3d 745, 752 (Ct. App. 1987).

An open account results where the parties intend that the individual items of the account shall not be considered independently, but as a connected series of transactions, and that the account shall be kept open and subject to a shifting balance as additional related entries of debits and credits are made, until it shall suit the convenience of either party to settle and close the account, and where, pursuant to the original express or implied intention, there is but one single and indivisible liability arising from such series of related and reciprocal debits and credits. This single liability is to be fixed on the one part or the other, as the balance shall indicate at the time of settlement, or following the last pertinent entry of the account, and it must be one mutually agreed upon between the parties or impliedly imposed upon them by law.

*R.N.C. Inc. v. Tsegeletos*, 231 Cal. App. 3d 967, 972 (Ct. App. 1991).

In this case, the Amended Complaint alleges that

Plaintiff and Defendant[], in the course of their dealings, including but not limited to those alleged above, had financial transactions which Plaintiff recorded in its regular course of business as patient healthcare claims, and Plaintiff as a business practice kept an account of the debits and credits involved in these transactions in a reasonably permanent form.

By virtue of the course of dealings between the parties, and the accounting maintained by Plaintiff related thereto in the regular course of business, Defendant[] owe[s] Plaintiff money on an open book account.

Defendant[] currently owe[s] Plaintiff money on the account in the amount of $238,309.12 together with interest at the legal rate.

(ECF No. 16 at 18).

The Amended Complaint fails to allege sufficient facts to establish that "the parties . . . intended or expected [ ] an [open book] account would be created . . . ." *Maggi*, 196 Cal. App. 3d at 752. Specifically, the Amended Complaint fails to allege sufficient facts to establish that "the parties intend[ed] that the individual items of the account shall not be considered independently, but as a connected series of transactions, and that the account shall be kept open and subject to a shifting balance as additional related entries of debits and credits are made, until it shall suit the convenience of either party to settle and close the account . . . ." *R.N.C.*, 231 Cal. App. 3d at 972. The Court concludes that Plaintiff's claim for open book account against Defendant fails to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

## V.   CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss filed by Defendant Premera Blue Cross (ECF No. 17) is GRANTED as to Plaintiff's second cause of action for breach of implied contract, fourth cause of action for quantum meruit, fifth cause of action for intentional misrepresentation (fraudulent inducement), sixth cause of action for negligent misrepresentation, seventh cause of action for intentional concealment, eighth cause of action for violation of Business & Professions Code § 17200, and ninth cause of action for open book account, and is otherwise DENIED.

Dated:  February 16, 2021

Hon. William Q. Hayes
United States District Court

23